<u>NOT FOR PUBLICATION</u>                                    (Doc. Nos. 37, 38, 40)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

—————————————————————— :
                                                    :
KAREN E. TUCKER,                                    :
                                                    :
                  Plaintiff,                        :          Civil No. 07-2230 (RBK)
                                                    :
       v.                                           :          **OPINION**
                                                    :
KATHLEEN SEBELIUS,[1] Secretary of the              :
Department of Health and Human Services,            :
                                                    :
                  Defendant.                        :
—————————————————————— :

**KUGLER**, United States District Judge:

       Plaintiff is a podiatrist who claims that the Secretary of the Department of Health and

Human Services failed to process or pay thousands of payment requests for services that Plaintiff

allegedly rendered to Medicare beneficiaries.  Plaintiff moves for reconsideration of the Court's

July 12, 2010 Opinion and Order dismissing her Complaint for lack of subject matter-jurisdiction

under Federal Rule of Civil Procedure 12(b)(1).  For the reasons discussed below, Plaintiff's

motion is denied.

## I.      BACKGROUND[2]

       Plaintiff practiced podiatry in Texas from 1994 until at least December 1998.  During that

time, most of her patients were nursing home residents.  Plaintiff received payment for her

services by submitting claims (either directly or through a billing agent) to Blue Cross Blue

—————————————————

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Secretary Kathleen Sebelius has been substituted for former
Secretary Michael O. Leavitt.

[2] The facts of this dispute are fully set forth in the Court's Opinion dated July 12, 2010 (the "Opinion") (Doc. No.
35).  The Court recounts the facts only as relevant to Plaintiff's motion for reconsideration.

Shield of Texas, which is a Medicare Part B Carrier.  In 1996, Plaintiff was investigated for health care fraud.  Plaintiff was subsequently indicted and charged with multiple counts of health care fraud and released pending trial.

In connection with the above criminal investigation and prosecution, a search warrant was issued for documents at Plaintiff's residence in May 1996.  Pursuant to the warrant, the government seized certain of Plaintiff's records on May 6, 1996.  In October 1996, Blue Cross Blue Shield notified Plaintiff that based on credible evidence that Plaintiff's Medicare claims were inaccurate it was suspending payment on Plaintiff's claims, but that it would continue to process her claims and notify her of claim determinations.

During the criminal investigation, the Medicare Fair Hearing Office notified Plaintiff that approximately 7,000 of her claims were not supported by adequate documentation and that Plaintiff should submit support for her claims.  In December 1997 and January 1998, the Medicare Fair Hearing Officers notified Plaintiff that it was dismissing those claims because Plaintiff failed to provide the requested documentation, but that Plaintiff could move to vacate the dismissals if she provided the paperwork within six months.[3]

While Plaintiff was out on bond awaiting her criminal trial, she contacted various physicians regarding issues relevant to the underlying criminal charges.  Thus, the government moved for the revocation of Plaintiff's bond.  Magistrate Judge Jeff Kaplan of the Northern District of Texas denied the government's motion but imposed certain conditions on Plaintiff's release, including:  (1) that Plaintiff refrain from practicing podiatry; (2) that she "avoid all

---

[3] Plaintiff is pro se and she does not specifically indentify which decisions by the Department of Health and Human Services she is challenging.  On the original motion to dismiss, the Secretary interpreted Plaintiff's Complaint as challenging roughly 7,000 claims by Plaintiff that the Secretary dismissed in December 1997 and January 1998 for abandonment, subject to a six-month grace period whereby Plaintiff could reinstate her claims by submitting necessary documentation.  On this motion for reconsideration, Plaintiff randomly alludes to other claims that she submitted (or wishes to submit) to the Department of Health and Human Services, but she does not identify particular claims other than those listed by the Secretary.  Thus, the Court construes Plaintiff Complaint as challenging those claims that the Secretary dismissed for abandonment in December 1997 and January 1998.

contact with any persons who may be a witness in this case, including any health care providers, nursing homes, Medicare personnel, and patients." (Compl. Ex. 5). Plaintiff understood this order to permit her to retain a third-party to submit legitimate Medicare claims on her behalf for services rendered before Judge Kaplan entered the order. Thus, she continued to submit Medicare claims through a third party.

In April 1998, the government again moved to revoke Plaintiff's bond because she had hired a third-party to submit payments on her behalf. The government argued that the terms of Plaintiff's release prohibited her from submitting Medicare claims. Magistrate Judge Kaplan declined to rule on the motion for procedural reasons. The government then filed a statement that it did not object to Plaintiff continuing to practice medicine while on pretrial release, but requesting that Plaintiff not be allowed to file Medicare claims while on pretrial release. The government also noted that, in any event, Medicare would not pay any of Plaintiff's claims until the conclusion of her criminal proceedings.

In December 1998, Plaintiff pled guilty to one count of health care fraud. On March 5, 1999, Plaintiff was sentenced to six months home confinement, three years probation, and was required to pay $26,402 in restitution to the United States. Following Plaintiff's guilty plea and sentencing, she began to pursue unpaid Medicare claims and to seek permission to submit untimely claims for treatment given as early as January 1996. In July 1999, she contacted Medicare requesting information as to how to appeal certain claims. Ultimately, Plaintiff was informed that her time to challenge approximately 7,000 disputed claims had lapsed. Specifically, the claims were denied, appealed to the carrier hearing level, and then dismissed for abandonment pursuant to 42 C.F.R. § 405.832(b). Because Plaintiff did not timely submit necessary supporting documentation, she was barred for reinstating her appeals. The Department

3

of Health and Human Services also rejected claims by Plaintiff that she did not submit until after her sentencing because they were untimely based on the treatment date.

In May 2007, after other correspondence with Blue Cross and the Fair Hearings Department, Plaintiff filed the Complaint requesting payment of all claims, interest, and costs. The Secretary timely moved to dismiss the Complaint for lack of subject-matter jurisdiction based on Plaintiff's failure to exhaust her administrative remedies.  The Court granted the Secretary's motion on July 12, 2010.  In holding that Plaintiff failed to exhaust her administrative remedies, the Court expressly rejected Plaintiff's arguments that the Court should waive the exhaustion requirement because:  (1) the government seized relevant documentation in May 1996 when it executed the warrant; (2) Plaintiff could not timely submit supplemental documentation in support of her Medicare claims without violating Judge Kaplan's order; and (3) Plaintiff could not submit supplemental documentation in support of her Medicare claims without risking further criminal indictment.

Plaintiff now moves for reconsideration of the Court's Opinion granting the Secretary's motion to dismiss.[4]  Plaintiff argues that that the "Court's opinion reflects a misunderstanding of the reasons why plaintiff could not file requested documentation for services [she] rendered [to] patients . . . ."  (Pl.'s Brief in Supp. of Mot. for Reconsideration, at 1).  Plaintiff again argues that she could not submit the required documentation because:  (1) the government confiscated relevant documents in May 1996 when it executed the warrant and did not return those

---

[4] Following this Court's dismissal of Plaintiff's Complaint on July 12, 2010, Plaintiff moved for an extension of time to make a motion for reconsideration, (Doc. No. 37).  Plaintiff moved for reconsideration on August 2, 2010. In view or the general policy favoring decision on the merits, see Port Auth. of N.Y. & N.J. v. Am. Stevedoring, Inc., No. 09-4299, 2011 U.S. Dist. LEXIS 39864, at*7 (D.N.J . Apr. 12, 2011), the Court grant's Plaintiff's request for an extension of time and accepts Plaintiff's motion for reconsideration.  Plaintiff also filed a "motion to dismiss defendants [sic] motion of opposition," (Doc. No. 40).  Plaintiff requests that the Court strike Defendant's opposition to Plaintiff's motion for reconsideration because she did not receive a copy of Defendant's opposition. Plaintiff subsequently filed a reply to Defendant's opposition that demonstrates that she received a copy of Defendant's opposition and had a fair opportunity to respond to Defendant's arguments.  Thus, the Court denies Plaintiff's motion and accepts Plaintiff's reply.

documents until August 1999; (2) she could not submit necessary documentation without risking

further indictment for obstruction of justice; and (3) she reasonably interpreted the court orders

in place during her criminal proceedings as preventing her from submitting additional

documentation.

## II.      STANDARD OF REVIEW

Motions for reconsideration are not expressly recognized in the Federal Rules of Civil

Procedure. See United States v. Compaction Sys. Corp., 88 F. Supp.2d 339, 345 (D.N.J. 1999).

Generally, a motion for reconsideration is treated as a motion to alter or amend judgment under

Federal Rule of Civil Procedure 59(e), or as a motion for relief from judgment or order under

Federal Rule of Civil Procedure 60(b).  See id.  In the District of New Jersey, Local Civil Rule

7.1(i) (formerly 7.1(g)) governs motions for reconsideration.  See Byrne v. Calastro, 2006 U.S.

Dist. LEXIS 64054 (D.N.J. Aug. 28, 2006).

Local Civil Rule 7.1(i) permits a party to seek reconsideration by the Court of matters

which the party "believes the Judge or Magistrate Judge has overlooked" when it ruled on the

motion.  See L. Civ. R. 7.1(i).  The standard for reargument is high and reconsideration is to be

granted only sparingly.  See United States v. Jones, 158 F.R.D. 309, 314 (D.N.J. 1994).  The

movant has the burden of demonstrating either: "(1) an intervening change in the controlling law;

(2) the availability of new evidence that was not available when the court [issued its order]; or

(3) the need to correct a clear error of law or fact or to prevent manifest injustice."  Max's

Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citing N. River Ins. Co. v. CIGNA

Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)).  The Court will grant a motion for

reconsideration only where its prior decision has overlooked a factual or legal issue that may

alter the disposition of the matter.  See Compaction Sys. Corp., 88 F. Supp.2d at 345; see also L.

Civ. R. 7.1(i).

      "The word 'overlooked' is the operative term in the Rule."  Bowers v. NCAA, 130 F.

Supp. 2d 610, 612 (D.N.J. 2001) (citation omitted); see also Compaction Sys. Corp., 88 F.

Supp.2d at 345.  Ordinarily, a motion for reconsideration may address only those matters of fact

or issues of law which were presented to, but not considered by, the court in the course of

making the decision at issue.  See SPIRG v. Monsanto Co., 727 F. Supp. 876, 878 (D.N.J.),

aff'd, 891 F.2d 283 (3d Cir. 1989).  Thus, reconsideration is not to be used as a means of

expanding the record to include matters not originally before the court.  See Bowers, 130 F.

Supp.2d at 613; Resorts Int'l. v. Great Bay Hotel and Casino, Inc., 830 F. Supp. 826, 831 & n.3

(D.N.J. 1992); Egloff v. New Jersey Air Nat'l Guard, 684 F. Supp. 1275, 1279 (D.N.J. 1988).

Absent unusual circumstances, a court should reject new evidence which was not presented when

the court made the contested decision.  See Resorts Int'l, 830 F. Supp. at 831 n.3.  A party

seeking to introduce new evidence on reconsideration bears the burden of first demonstrating

that evidence was unavailable or unknown at the time of the original hearing.  See Levinson v.

Regal Ware, Inc., Civ. No. 89-1298, 1989 U.S. Dist. LEXIS 18373, at *3 (D.N.J. Dec. 1, 1989).

      Moreover, L. Civ. R. 7.1(i) does not allow parties to restate arguments which the court

has already considered.  See G-69 v. Degnan, 748 F. Supp. 274, 275 (D.N.J. 1990).  Thus, a

difference of opinion with the court's decision should be dealt with through the normal appellate

process.  See Bowers, 130 F. Supp. 2d at 612 (citations omitted); Florham Park Chevron, Inc. v.

Chevron U.S.A., Inc., 680 F. Supp. 159, 162 (D.N.J. 1988); see also Chicosky v. Presbyterian

Medical Ctr., 979 F. Supp. 316, 318 (D.N.J. 1997); NL Indus., Inc. v. Commercial Union Ins.

Co., 935 F. Supp. 513, 516 (D.N.J. 1996) ("Reconsideration motions . . . may not be used to re-

6

litigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.").  In other words, "[a] motion for reconsideration should not provide the parties with an opportunity for a second bite at the apple."  <u>Tischio v. Bontex, Inc.</u>, 16 F. Supp. 2d 511, 533 (D.N.J. 1998) (citation omitted).

## III.    DISCUSSION

On this motion, Plaintiff does not contest the Court's prior determination that she failed to exhaust administrative remedies before bringing this action.  Rather, Plaintiff alleges that the Court should waive the exhaustion requirement.

The Third Circuit has held that judicial waiver of the exhaustion requirement may be appropriate if the claimant raises constitutional challenges or if the claimant raises "statutory issues [on] which the Secretary [had] taken a final position."  <u>Rankin v. Heckler</u>, 761 F.2d 936, 940 (3d Cir. 1985).  "In those cases, the requirement of exhaustion does not serve any underlying policy, because in the former case the federal court is more qualified to address constitutional questions than the agency and in the latter case further appeals are futile in the light of the final position already taken."  <u>Id.</u> at 940-41.

There are three criteria that must be met before judicial waiver of the exhaustion requirement is appropriate:  (1) the unexhausted claim must be "substantially collateral" to the question of whether the claimant is entitled to benefits; (2) the Secretary must have taken a "fixed and final position" on the claim, thereby rendering exhaustion futile; and (3) insisting on exhaustion must be likely to cause the claimant to incur substantial hardship or irreparable harm.  <u>Kuehner v. Schweiker</u>, 717 F.2d 813, 822-23 (3d Cir. 1983) (Becker, J., concurring), <u>judgment vacated on other grounds by</u>, 469 U.S. 977 (1984); <u>see</u> <u>Abbey v. Sullivan</u>, 978 F.2d 37, 44 (2d Cir. 1992).

7

Plaintiff argues that the Court should waive the exhaustion requirement because:  (1) the government confiscated relevant documents in May 1996 when it executed the warrant and did not return those documents until August 1999; (2) Plaintiff could not submit necessary documentation without risking further indictment for obstruction of justice; and (3) she reasonably interpreted the court orders in effect during her criminal proceedings as preventing her from submitting additional documentation.  The Court addresses each argument in turn.

### A.  Whether the Search Warrant Prevented Plaintiff from Exhausting Her Administrative Remedies

Plaintiff argues that the Court erred in dismissing her Complaint because it failed to recognize that in May 1996 the government seized all of her documentation regarding Medicare claims for services rendered between September 1994 and May 1996.  (Pl.'s Reply Br., at 3).  According to Plaintiff, the government did not return that documentation until August 1999.  Plaintiff's claims were dismissed by the Secretary in December 1997 and January 1998, and she had six months to cure deficiencies before her claims were abandoned.  However, Plaintiff claims that after the search warrant was executed on May 6, 1996, she did not have access to any of her documentation regarding those claims until August 1999.  Thus, according to Plaintiff, she could not submit any supplemental documentation in support of her claims before the sixth month period expired in May and June 1998.

The Court previously addressed this argument by Plaintiff.  In the Opinion, the Court rejected Plaintiff's argument as "flatly contradicted by the record, which indicates that Dr. Tucker had []tubs full of records and had even gone so far as to hire a third-party to sift through these records and submit claims to Medicare on Dr. Tucker's behalf during the course of her criminal prosecution."  (Doc. No. 35, at 14).  Thus, the Court found that waiver was not appropriate because Plaintiff had a fair opportunity to comply with the exhaustion requirement.

8

On this motion for reconsideration, Plaintiff does not present any new arguments or evidence in support of her position.  Indeed, the Court's reexamination for the record confirms that Plaintiff had a meaningful opportunity to comply with the exhaustion requirement.  On April 29, 1998, Plaintiff's attorney appeared before Magistrate Judge Kaplan regarding the government's motion to alter the terms of Plaintiff's pre-trial release.  A central issue at that hearing was whether Plaintiff violated the release order by retaining Regina Cooper to review Plaintiff's Medicare claims and submit documentation in support of those claims.  (Compl. Ex., 6, at 12:1-4).  Ms. Cooper testified before Judge Kaplan that she received "hundreds and thousands" of documents from Plaintiff regarding her prior claims.  (Id. at 28:16-17).  Those documents included copies of "patient charts from nursing homes."  (Id. at 36:6-21).  Ms. Cooper testified that Plaintiff gave her those documents.  (Id. at 36:20).  Ms. Cooper also testified that based on the documents she received from Plaintiff she could verify Plaintiff's claims and pursue those claims on Plaintiff's behalf, including the initial submission of certain claims and the "correction" of rejected claims.  (Id. at 31:1-32:3).  Ms. Cooper further testified that she was aware of several pending appellate proceedings regarding Plaintiff's claims.  (Id. at 28:21-29:7).

This hearing occurred within the six-month period when the Secretary would have accepted documentation from Plaintiff in support of her rejected claims.  Thus, Plaintiff's assertion that the warrant prevented her from submitting relevant documentation is incredible.  According to Ms. Cooper's testimony, Plaintiff gave Ms. Cooper "hundreds and thousands" of documents related to her claims.  The substantial weight of the evidence suggests that Plaintiff

could access documents in support of her claim.  Thus, waiver of the exhaustion requirement is inappropriate.[5]

### B.  Whether the Government's Threat of Prosecution Deprived Plaintiff of a Meaningful Opportunity to Exhaust Her Administrative Remedies

Plaintiff claims that after the government indicted her for submitting fraudulent Medicare claims, she attempted to obtain necessary documentation by contacting treating physicians. After several physicians reported Plaintiff's conduct because they believed that Plaintiff's inquiries amounted to a request for falsification of documents, the government subsequently indicted Plaintiff for obstruction of justice.  Plaintiff now argues that she was unable to comply with the exhaustion requirement because she was fearful that her attempts to gather and submit documentation in support of her claims would result in additional criminal charges.

The Court fully addressed this argument in the Opinion.  In May 1998, at a hearing before Chief Judge Jerry Buchmeyer, both parties indicated that they believed that Judge Kaplan had lifted any ban on Plaintiff pursuing her Medicare claims.  (Compl. Ex. 22, at 4:24-6:6).  The hearing transcript demonstrates that neither Plaintiff nor the government believed that the government could further prosecute Plaintiff if she pursued her Medicare claims.  Thus, the government did not rob Plaintiff of a meaningful opportunity to submit timely documentation in support of her Medicare claims.  Moreover, even after Plaintiff's sentencing in March 5, 1999, Plaintiff did not immediately pursue her claims.  Rather, she waited more than four months before revisiting her claims.  These circumstances do not justify waiver of the exhaustion

---

[5] To be sure, Ms. Cooper did not testify as to the precise timeframe covered by the documents she received from Plaintiff.  However, Plaintiff does not submit any evidence to support her claim that the documents she provided to Ms. Cooper did not include claims for services rendered before May 1996.  Rather, the context of Ms. Cooper's testimony as well as her assertion that the document related to claims that were "more than a year" old, (Compl. Ex. 6, at 31:21-32:3), suggests that the documents related to claims for services rendered during the relevant period. Absent more credible proof that the documents provided to Ms. Cooper did not relate to the claims at issue here, the Court will not waive the exhaustion requirement.

10

requirement.  Plaintiff had a meaningful opportunity to exhaust her administrative remedies and she did not do so.

### C.  Whether Judge Kaplan's Order Prevented Plaintiff from Exhausting Her Administrative Remedies

Plaintiff argues that the exhaustion requirement should be waived because Judge Kaplan's order prevented her from timely pursuing her Medicare claims.  The Court previously rejected this argument and it remains meritless.  As discussed above, the hearing before Chief Judge Buchmeyer on May 13, 1998 demonstrates that both Plaintiff and the government believed that Judge Kaplan removed any ban on Plaintiff pursuing her Medicare claims.  Nevertheless, Plaintiff did not pursue those claims until July 1999.  Those circumstances do not justify waiver of the exhaustion requirement.

### IV.    CONCLUSION

For the reasons discussed above, Plaintiff's motion for reconsideration is denied.  An appropriate Order shall enter.


Dated: 7/25/2011                                     /s/ Robert B. Kugler
                                                     ROBERT B. KUGLER
                                                     United States District Judge

11